OPINION OF THE COURT
Joan B. Lobis, J.
This action was commenced by a former student of defendant Playwrights Horizons Theatre School (Playwrights). Defendant Playwrights and the individual defendants have brought the present motion to dismiss the complaint on the ground that it fails to state a cause of action. Defendants New York University (NYU) and New York University Tisch School of the Arts (TSOA) have also brought a separate motion to dismiss the complaint against them. Both of these motions are consolidated for disposition. For the reasons stated below, the motions of all defendants for a dismissal of the complaint are granted and the complaint is hereby dismissed in its entirety.
The relevant facts are as follows. Playwrights is a theatre school offering classes in acting, directing, playwriting and other aspects of theatrical production. Plaintiff attended classes at Playwrights for a number of terms between September 1992 and February 1994. During part of that period, defendant Susan Finch (Finch), a Playwrights faculty member, gave plaintiff private speech lessons in her home approximately once a week. Finch alleges that she terminated those lessons after plaintiff left several inappropriate messages on her telephone answering machine saying, among other things, that he loved and missed her. She also reported these incidents to defendant Randy Smith (Smith), a supervisor at Playwrights. In February 1994, Christopher Ceraso, a member of the Playwrights faculty, informed defendant Smith about comments plaintiff made to him which led him to believe that plaintiff was suffering from severe psychological problems. Some of the statements plaintiff allegedly made to Ceraso were that defendant Finch had killed Christopher Walken’s father and was attempting to kill plaintiff’s father and that Finch was making hats containing devices that could invade the mind of the person wearing the hat. After these events took place, Playwrights decided to prohibit plaintiff from *1086 attending the school. The school notified plaintiff of its decision and refunded the tuition paid by plaintiff. After the plaintiff’s enrollment in Playwrights was terminated, plaintiff spoke on a number of occasions to Melody Somers, the head of the acting department of Playwrights who is also a trained psychotherapist. Somers testified that plaintiff has left a number of messages on her answering machine, including one in which he asserted that an unidentified "they” were going to kill Ms. Finch.
After plaintiff was no longer allowed to enroll in classes at Playwrights, he commenced the present action. His pro se complaint alleges that defendant Finch victimized him and Matthew Broderick and Christopher Walken, both of whom are both well-known actors. Plaintiff’s complaint alleges in graphic and ample detail that defendant Finch informed him that she performed a number of degrading and emotional abuses upon Matthew Broderick and Christopher Walken but that these persons no longer remember such events because they were brainwashed. According to plaintiff’s complaint, defendant Finch sexually abused Broderick and Walken, placed listening devices and miniature cameras in both of their apartments and arranged to drug their food. Plaintiff then states that Finch also did these things to him. For example, plaintiff alleges that defendants Finch and Smith, with the assistance of a detective agency named Christen Alva Investigations (CAI), conducted a surveillance operation against him which included planting cameras in both Playwrights’ and plaintiff’s apartment. Plaintiff also claims that Finch harassed him at his work place, Gold’s Gym, where he worked in the membership department, by having a number of people pose as prospective customers. For example, plaintiff alleges that someone came to Gold’s Gym wearing a softball jacket which plaintiff knew had just been made because the stitching was such that it could not have been more than a few days old. According to plaintiff, the jacket had the initials P.M. on it which was a reference to Finch’s stage name Penelope Ann Miller.
The law is well established that factual claims which are inherently incredible are not presumed to be true on a motion to dismiss for legal insufficiency. (See, O’Donnell, Fox & Gartner v R-2000 Corp., 198 AD2d 154 [1st Dept 1993]; see also, Muka v New York State Bar Assn., 120 Misc 2d 897 [Sup Ct, Tompkins County 1983].) This court finds that the allegations in plaintiff’s complaint are so inherently incredible as to not *1087 be believable. For example, plaintiff repeatedly insists in his papers that Christopher Walken (a famous actor) is the same person as Chris Ceraso (a faculty member at Playwrights) and Penelope Ann Miller (a famous actress) is the same person as defendant Finch. However, attached to the papers submitted to this court are pictures of these four people and it is obvious beyond a shadow of a doubt upon reviewing these pictures that these people are four different people. Similarly, plaintiff’s allegation that numerous scandalous actions were done by Ms. Finch against Matthew Broderick and Christopher Walken and that they do not remember any of these events because they were brainwashed is also inherently incredible. Most of the other factual claims in plaintiff’s complaint are also inherently incredible. As a result, plaintiff has failed to state a viable cause of action against the defendants.
There is also no basis for any claim as against NYU and TSOA (the University defendants). Defendants Finch and Smith were never employed by the University defendants and the program in which plaintiff was involved at Playwrights is not affiliated with any New York University program. Nor does plaintiff allege any wrongdoing on the part of the University defendants. Therefore, the complaint is dismissed as against the University defendants on the independent ground that there is no basis for imposing any liability on them for the actions described in the complaint.